## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

IN RE:                                    **CASE NO.: 8:19-bk-03059-RCT**
                                                         **CHAPTER 7**

**Karin D. Case,**

    **Debtor.**

_____/

## MOTION FOR RELIEF FROM AUTOMATIC STAY

---

### NOTICE OF OPPORTUNITY TO
### OBJECT AND REQUEST FOR HEARING

**Pursuant to Local Rule 2002-4, the Court will consider the relief requested in this paper without further notice or hearing unless a party in interest files a response within twenty one (21) days from the date set forth on the attached proof of service, plus an additional three days for service if any party was served by U.S. Mail.**

**If you object to the relief requested in this paper, you must file a response with the Clerk of the Court at Sam M. Gibbons United States Courthouse, 801 N. Florida Avenue, Suite 555, Tampa, Florida 33602 and serve a copy on the movant's attorney, Attorney for Secured Creditor, at Robertson, Anschutz & Schneid, PL, 6409 Congress Ave., Suite 100, Boca Raton, FL 33487, and any other appropriate persons within the time allowed.  If you file and serve a response within the time permitted, the Court will either schedule and notify you of a hearing, or consider the response and grant or deny the relief requested without a hearing.**

**If you do not file a response within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

---

Secured Creditor, Nationstar Mortgage LLC d/b/a Mr. Cooper, by and through the undersigned counsel, hereby moves this Court, pursuant to 11 U.S.C. § 362(d), for a modification of the automatic stay provisions for cause, and, in support thereof, states the following:

1. Debtor(s), Karin D. Case, filed a voluntary petition pursuant to Chapter 7 of the United States Bankruptcy Code on April 3, 2019.

2. Jurisdiction of this cause is granted to the Bankruptcy Court pursuant to 28 U.S.C. **§**

1334, 11 U.S.C. § 362(d), Fed. R. Bankr. P. 4001(a), and all other applicable rules and statutes affecting the jurisdiction of the Bankruptcy Courts generally.

3.  Secured Creditor hereby waives the requirements of 11 U.S.C. § 362(e). The automatic stay of any act against property of the estate under § 362(a) shall continue until this Court orders or the stay is otherwise terminated by operation of law.

4.  On May 22, 2008, Debtor(s) executed and delivered a Promissory Note ("Note") and a Mortgage ("Mortgage") securing payment of the Note in the amount of $231,420.00 to Security Atlantic Mortgage Co., Inc. The Mortgage was recorded on June 2, 2008 in Book 16272 at Page 59 of the Public Records of Pinellas County, Florida.  The loan was transferred to Secured Creditor. True and accurate copies of documents establishing a perfected security interest and ability to enforce the terms of the Note are attached hereto as Composite Exhibit "A."  The documents include copies of the Note with any required indorsements, Recorded Mortgage, Assignment(s) of Mortgage, and any other applicable documentation supporting the right to seek a lift of the automatic stay and foreclose, if necessary.

5.  Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgements, mortgages, and security agreements in support of right to see a lift of the automatic stay and foreclose if necessary.

6.  The Mortgage provides Secured Creditor a lien on the real property located at 615 6th Ave N, Safety Harbor, FL 34695, in Pinellas County, and legally described as stated in

the Mortgage attached in Composite Exhibit "A."

7. The terms of the aforementioned Note and Mortgage have been in default, and remain in default, since September 1, 2018.

8. The appraised value of the property is $166,999.00. See Exhibit "B" which is attached hereto and permissible as a property valuation under Fed. R. Evid. 803(8).

9. Based upon the Debtor(s)' schedules, the property is surrendered and claimed as non-exempt. The Trustee has not abandoned the property.

10. Secured Creditor's security interest in the subject property is being significantly jeopardized by Debtor(s)' failure to comply with the terms of the subject loan documents while Secured Creditor is prohibited from pursuing lawful remedies to protect such interest. Secured Creditor has no protection against the erosion of its collateral position and no other form of adequate protection is provided.

11. If Secured Creditor is not permitted to enforce its security interest in the collateral or be provided with adequate protection, it will suffer irreparable injury, loss, and damage.

12. Secured Creditor respectfully requests the Court grant it relief from the Automatic Stay in this cause pursuant to §362(d)(1) of the Bankruptcy Code, for cause, namely the lack of adequate protection to Secured Creditor for its interest in the above stated collateral. The value of the collateral is insufficient in and of itself to provide adequate protection which the Bankruptcy Code requires to be provided to the Secured Creditor. Secured Creditor additionally seeks relief from the Automatic Stay pursuant to §362(d)(2) of the Bankruptcy Code, as the collateral is unnecessary to an effective reorganization of the Debtor's assets.

13. Once the stay is terminated, the Debtor will have minimal motivation to insure, preserve, or protect the collateral; therefore, Secured Creditor requests that the Court waive the 14-day stay period imposed by Fed.R.Bankr.P. 4001(a)(3).

14. Secured Creditor has incurred court costs and attorney's fees in this proceeding and will incur additional fees, costs and expenses in foreclosing the Mortgage and in preserving and protecting the property, all of which additional sums are secured by the lien of the mortgage. Secured Creditor seeks an award of its reasonable attorneys' fees and costs, or alternatively, leave to seek recovery of its reasonable attorneys' fees and costs in any pending or subsequent foreclosure proceeding.

15. A Proposed Order accompanies this Motion. See Exhibit "C" attached hereto.

**WHEREFORE**, Secured Creditor, prays this Honorable Court enter an order modifying the automatic stay under 11 U.S.C. § 362(d) to permit Secured Creditor to take any and all steps necessary to exercise any and all rights it may have in the collateral described herein, to gain possession of said collateral, to waive the 14-day stay imposed by Fed.R.Bankr.P. 4001(a)(3), to seek recovery of its reasonable attorneys' fees and costs incurred in this proceeding, and to any such further relief as this Honorable Court deems just and appropriate.

Date: April 15, 2019

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-241-1969
By: /s/ Christopher P. Salamone
Christopher P. Salamone, Esquire
Florida Bar Number 75951
Email: csalamone@rasflaw.com

8:19-BK-03059-RCT
18-239142
MFR

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on April 15, 2019, I electronically filed the foregoing with

the Clerk of Court by using the CM/ECF system, and a true and correct copy has been served via

CM/ECF or United States Mail to the following parties:

Karin D. Case
2522 Ochatilla Road
Holiday, FL 34691

Howard Iken
703 W. Bay Street
Tampa, FL 33606

Richard M Dauval
P.O. Box 13607
St. Petersburg, FL 33733-3607

United States Trustee - TPA7/13
Timberlake Annex, Suite 1200
501 E Polk Street
Tampa, FL 33602

ROBERTSON, ANSCHUTZ & SCHNEID, P.L.
Attorney for Secured Creditor
6409 Congress Ave., Suite 100
Boca Raton, FL 33487
Telephone: 561-241-6901
Facsimile: 561-241-1969
By: /s/ Christopher P. Salamone
Christopher P. Salamone, Esquire
Florida Bar Number 75951
Email: csalamone@rasflaw.com

# EXHIBIT "A"

ORIGINAL

**NOTE**

CASE
Loan #:
MIN
Case #:

| May 22, 2008 | CLEVELAND | Ohio |
|---|---|---|
| [Date] | [City] | [State] |

615 6TH AVE N, SAFETY HARBOR, FL 34695
[Property Address]

## 1. PARTIES

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns. "Lender" means **SECURITY ATLANTIC MORTGAGE CO. INC.** and its successors and assigns.

## 2. BORROWER'S PROMISE TO PAY; INTEREST

In return for a loan received from Lender, Borrower promises to pay the principal sum of **Two Hundred Thirty One Thousand Four Hundred Twenty** Dollars (U.S. **$231,420.00**), plus interest, to the order of Lender. Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Five And Seven-Eighths** percent (**5.875%**) per year until the full amount of principal has been paid.

## 3. PROMISE TO PAY SECURED

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

## 4. MANNER OF PAYMENT

### (A) Time

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **July 1, 2008.** Any principal and interest remaining on the first day of **June, 2038**, will be due on that date, which is called the "Maturity Date."

### (B) Place

Payment shall be made at **619 AMBOY AVENUE, EDISON, NJ 08837** or at such place as Lender may designate in writing by notice to Borrower.

### (C) Amount

Each monthly payment of principal and interest will be in the amount of U.S. **$1,368.94**. This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

### (D) Allonge to this Note for payment adjustments

If an allonge providing for payment adjustments is executed by Borrower together with this Note, the covenants of the allonge shall be incorporated into and shall amend and supplement the covenants of this Note as if the allonge were a part of this Note. [Check applicable box.]

☐ Graduated Payment Allonge    ☐ Growing Equity Allonge    ☐ Other [Specify] _____

## 5. BORROWER'S RIGHT TO PREPAY

Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty, on the first day of any month. Lender shall accept prepayment on other days provided that Borrower pays interest on the amount prepaid for the remainder of the month to the extent required by Lender and permitted by regulations of the Secretary. If Borrower makes a partial prepayment, there will be no changes in the due date or in the amount of the monthly payment unless Lender agrees in writing to those changes.

36.5



Page 1 of 3

FHA Florida Fixed Rate Note -- 12/01



## 6. BORROWER'S FAILURE TO PAY

### (A) Late Charge for Overdue Payments

If Lender has not received the full monthly payment required by the Security Instrument, as described in Paragraph 4(C) of this Note, by the end of fifteen calendar days after the payment is due, Lender may collect a late charge in the amount of **Four** percent **(4.000%)** of the overdue amount of each payment.

### (B) Default

If Borrower defaults by failing to pay in full any monthly payment, then Lender may, except as limited by regulations of the Secretary in the case of payment defaults, require immediate payment in full of the principal balance remaining due and all accrued interest. Lender may choose not to exercise this option without waiving its rights in the event of any subsequent default. In many circumstances regulations issued by the Secretary will limit Lender's rights to require immediate payment in full in the case of payment defaults. This Note does not authorize acceleration when not permitted by HUD regulations. As used in this Note, "Secretary" means the Secretary of Housing and Urban Development or his or her designee.

### (C) Payment of Costs and Expenses

If Lender has required immediate payment in full, as described above, Lender may require Borrower to pay costs and expenses including reasonable and customary attorneys' fees for enforcing this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

## 7. WAIVERS

Borrower and any other person who has obligations under this Note waive the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the property address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note against each person individually or against all signatories together. Any one person signing this Note may be required to pay all of the amounts owed under this Note.

## 10. DOCUMENTARY TAX

The state documentary tax due on this Note has been paid on the mortgage securing this indebtedness.

---

36.5                           Page 2 of 3                    FHA Florida Fixed Rate Note -- 12/01

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

*Karin D Case* 5-22-08

– BORROWER – KARIN D. CASE  – DATE –

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

*[Sign Original Only]*

BY _____
*Laurie Meder*
LAURIE MEDER
SENIOR VICE PRESIDENT

WITHOUT RECOURSE, PAY TO THE ORDER OF:
Countrywide Bank, FSB

SECURITY ATLANTIC MORTGAGE CO, INC.

JOHANNA GREBELSKY
ASSISTANT SECRETARY

36.5                    Page  3  of  3                    FHA Florida Fixed Rate Note -- 12/01

Record & Return To:
Mortgage Information Services
4877 Galaxy Parkway, Ste I
Cleveland, OH 44128

Prepared By: *Yasmiin Arraya*

SECURITY ATLANTIC MORTGAGE
CO. INC.
619 AMBOY AVENUE
EDISON, NJ 08837

KEN BURKE, CLERK OF COURT
PINELLAS COUNTY FLORIDA
INST# 2008149770 06/02/2008 at 03:48 PM
OFF REC BK: 16272 PG: 59-66
DocType:MTG RECORDING: $69.50

M DOC STAMP: $810.25 INT TAX: $462.84

M.I.S. FILE NO.

[Space Above This Line For Recording Data]

## MORTGAGE

CASE
Loan #
PIN:
Case #
MIN:

THIS MORTGAGE ("Security Instrument") is given on **May 22, 2008**. The mortgagor is **KARIN D. CASE, UNMARRIED** ("Borrower"). This Security Instrument is given to Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of Post Office Box 2026, Flint, Michigan 48501-2026, telephone (888)679-MERS. **SECURITY ATLANTIC MORTGAGE CO. INC.** ("Lender") is organized and existing under the laws of **New Jersey**, and has an address of **619 AMBOY AVENUE, EDISON, NJ 08837**. Borrower owes Lender the principal sum of **Two Hundred Thirty-One Thousand Four Hundred Twenty And 00/100** Dollars (U.S. $231,420.00). This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on **June 1, 2038**. This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the following described property located in **PINELLAS** County, Florida:
SEE ATTACHED SCHEDULE A
PARCEL # 03-29-16-09414-000-0140
which has the address of **615 6TH AVE N, SAFETY HARBOR**, Florida **34695** ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

370.31                          Page 1 of 7                          FHA Florida Mortgage

*KDC*

**FIRST AMERICAN TITLE INSURANCE COMPANY**

**EXHIBIT "A"**

THE LAND REFERRED TO IN THIS EXHIBIT IS LOCATED IN THE COUNTY OF
PINELLAS AND THE STATE OF FLORIDA IN DEED BOOK 10309 AT PAGE
2189 AND DESCRIBED AS FOLLOWS:

LOT 14, BLUE SPRINGS, ACCORDING TO THE MAP OR PLAT THEREOF AS
RECORDED IN PLAT BOOK 57, PAGE 7, PUBLIC RECORDS OF PINELLAS
COUNTY, FLORIDA.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under Paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under Paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either(a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in Paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in Paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all

outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provision of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in Paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in Paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

370.31                                   Page 3 of 7                              FHA Florida Mortgage

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent) and

    (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note are not to be eligible for insurance under the National Housing Act within **60 days** from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **60 days** from the date hereof, declining to insure this Security Instrument and the Note shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    **10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorney's fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

    **11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

    **12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and

agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of Paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16 "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

Upon default as provided in Paragraph 9(a), and upon written demand by Lender to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the

370.31                    Page 5 of 7                    FHA Florida Mortgage

Security Instrument is paid in full.

**18. Foreclosure Procedure:** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies in this paragraph 18, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

**19. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument without charge to Borrower. Borrower shall pay any recordations costs.

**20. Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

**21. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

The Following Rider(s) are to be executed by Borrower and are attached hereto and made a part thereof [check box as applicable]:

☐ Condominium Rider      ☐ Growing Equity Rider      ☐ Adjustable Rate Rider
☐ Planned Unit Development Rider      ☐ Graduated Payment Rider
☐ Other(s) [specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

- BORROWER - KARIN D. CASE - DATE -

Borrower's Mailing Address: 615 6TH AVE N, SAFETY HARBOR, FL 34695

Signed, sealed, and delivered in the presence of:

BRITTNEY NOLAN
MY COMMISSION # DD644879
EXPIRES February 27, 2011
(407) 398-0153     FloridaNotaryService.com

370.31        Page 6 of 7        FHA Florida Mortgage

**STATE OF Florida**

**COUNTY OF PINELLAS**

The foregoing instrument was acknowledged before me this **22nd** day of **May, 2008**, by **KARIN D. CASE, UNMARRIED**. Who is personally known to me or has produced ___Driver License___ as identification.

_____
Notary Public

My Commission Expires: 2.27.11
Serial #:



**BRITTNEY NOLAN**
MY COMMISSION # DD644879
EXPIRES February 27, 2011
(407) 398-0153      FloridaNotaryService.com

370.31                              Page 7 of 7                              FHA Florida Mortgage

Recording Requested By:
**Bank of America**
Prepared By: Bank of America
800-444-4302
When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

Property Address:
**615 6th Ave N**
**Safety Harbor, FL 34695-3000**
5/8/2012

This space for Recorder's use

MIN #: ▮▮▮▮    MERS Phone #: ▮▮▮▮

## ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor") whose address is **1901 E Voorhees Street, Suite C, Danville, IL 61834** does hereby grant, sell, assign, transfer and convey unto **BANK OF AMERICA, N.A., SUCCESSOR BY MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING, LP** whose address is **451 7TH ST.SW #B-133, WASHINGTON DC 20410** all beneficial interest under that certain Mortgage described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Mortgage.

Original Lender:         **SECURITY ATLANTIC MORTGAGE CO. INC**
Original Borrower(s):    **KARIN D CASE, UNMARRIED**
Date of Mortgage:       **5/22/2008**
Original Loan Amount:   **$231,420.00**
Recorded in Pinellas County, FL on: 6/2/2008, book REC16272, page 59 and instrument number **2008149770**

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Mortgage to be executed on
~~MAY 1 0 2012~~
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**

By: ~~Luis Roldan~~           By: _Bud K_
    ~~Assistant Secretary~~        **Bud Kamyabi**
                                   _Assistant Secretary_

Witness: _____ Srbui Muradyan       Witness: _____ Mercedes Judilla

State of California
County of Ventura

On **MAY 1 0 2012** before me, _____ Alen Badikyan _____, Notary Public, personally
appeared _____ Luis Roldan _____ and _____ Bud Kamyabi _____, who proved
to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person
(s) acted, executed the instrument.

I certify under **PENALTY OF PERJURY** under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

(Seal)
ALEN BADIKYAN
COMM. # 1886871
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires April 24, 2014

Notary Public: _____ Alen Badikyan
My Commission Expires: **April 24, 2014**

Recording requested by:
BANK OF AMERICA N.A.,
SUCCESSOR BY MERGER TO BAC
HOME LOANS SERVICING, LP FKA
COUNTRYWIDE HOME LOANS
SERVICING, LP

When recorded mail to:
BANK OF AMERICA, N.A.
DOCUMENT PROCESSING MAIL CODE
TX2-979-01-19
4500 AMON CARTER BLVD
FORT WORTH, TX 76155
Attn: ASSIGNMENT UNIT

---

CORPORATION ASSIGNMENT OF MORTGAGE
Doc. ID#
Commitmen ██████████

For value received, the undersigned, BANK OF AMERICA N.A., SUCCESSOR BY
MERGER TO BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS SERVICING,
LP, 1800 TAPO CANYON ROAD, SIMI VALLEY, CA 93063, hereby grants, assigns and
transfers to:
NATIONSTAR MORTGAGE, LLC
350 HIGHLAND DRIVE, LEWISVILLE, TX 75067

All its interest under that certain Mortgage dated 5/22/08, executed by:
KARIN D CASE, Mortgagor as per MORTGAGE recorded as Instrument No. 2008149770
on 6/02/08 in Book 16272 Page 59 of official records in the County Recorder's
Office of PINELLAS County, FLORIDA.
    Tax Parcel = 23335,    PINELLAS COUNTY TAX COLLECTOR
Original Mortgage $231,420.00
615 6TH AVE N, SAFETY HARBOR, FL 34695

Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Mortgage.

Dated:  1-14-13        BANK OF AMERICA N.A., SUCCESSOR BY MERGER TO BAC HOME
                       LOANS SERVICING, LP FKA COUNTRYWIDE HOME LOANS
                       SERVICING, LP

                By  *Cynthia Romo*
                    CYNTHIA ROMO, ASSISTANT VICE PRESIDENT

State of California
County of Ventura

On  1-14-13  before me, TAKAYUKI E UTO , Notary Public, personally appeared
CYNTHIA ROMO, who proved to me on the basis of satisfactory evidence to be
the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed the same in his/her their
authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature:  _____
             TAKAYUKI E UTO

Prepared by: THANIA ORNELAS
1800 TAPO CANYON ROAD
SIMI VALLEY, CA 93063
Phone#: (213) 345-0979

```
TAKAYUKI E. UTO
Commission # 1842250
Notary Public - California
Los Angeles County
My Comm. Expires Mar 27, 2013
```

# EXHIBIT "B"

Interactive Map of this parcel　　　　Sales Query　　　Back to Query Results　　　New Search　　　Tax Collector Home Page　　　Contact Us

**Compact Property Record Card**

Tax Estimator　　　　　　　**Updated** April 6, 2019　　　　　　　Email Print　　　Radius Search　　　FEMA/WLM

| Ownership/Mailing Address Change Mailing Address | Site Address |
|---|---|
| CASE, KARIN D<br>615 6TH AVE N<br>SAFETY HARBOR FL 34695-3000 | 615 6TH AVE N<br>SAFETY HARBOR |

Property Use: 0110 (Single Family Home)　　　　　Total Living: SF: 1,748　　　Total Gross SF: 1,825　　　Total Living Units:1

[click here to hide] **Legal Description**
BLUE SPRINGS LOT 14

| Tax Estimator　　File for Homestead Exemption | 2019 Parcel Use |
|---|---|

| Exemption | 2019 | 2020 | |
|---|---|---|---|
| Homestead: | Yes | Yes | *Assuming no ownership changes before Jan. 1 |
| Government: | No | No | Homestead Use Percentage: 100.00% |
| Institutional: | No | No | Non-Homestead Use Percentage: 0.00% |
| Historic: | No | No | Classified Agricultural: No |

**Parcel Information** Latest Notice of Proposed Property Taxes (TRIM Notice)

| Most Recent Recording | Sales Comparison | Census Tract | Evacuation Zone<br>(NOT the same as a FEMA Flood Zone) | Flood Zone<br>(NOT the same as your evacuation zone) | Plat Book/Page |
|---|---|---|---|---|---|
| 10309/2189 | $202,600 Sales Query | 121030268162 | C | Compare Preliminary to Current FEMA Maps | 57/7 |

**2018 Final Value Information**

| Year | Just/Market Value | Assessed Value / SOH Cap | County Taxable Value | School Taxable Value | Municipal Taxable Value |
|---|---|---|---|---|---|
| 2018 | $168,504 | $103,400 | $53,400 | $78,400 | $53,400 |

[click here to hide] Value History as Certified (yellow indicates correction on file)

| Year | Homestead Exemption | Just/Market Value | Assessed Value | County Taxable Value | School Taxable Value | Municipal Taxable Value |
|---|---|---|---|---|---|---|
| 2017 | Yes | $166,999 | $101,273 | $51,273 | $76,273 | $51,273 |
| 2016 | Yes | $150,514 | $99,190 | $49,190 | $74,190 | $49,190 |
| 2015 | Yes | $138,528 | $98,500 | $48,500 | $73,500 | $48,500 |
| 2014 | Yes | $109,790 | $97,718 | $47,718 | $72,718 | $47,718 |
| 2013 | Yes | $102,069 | $96,274 | $46,274 | $71,274 | $46,274 |
| 2012 | Yes | $97,338 | $94,665 | $44,665 | $69,665 | $44,665 |
| 2011 | Yes | $99,705 | $91,908 | $41,908 | $66,908 | $41,908 |
| 2010 | Yes | $127,298 | $90,550 | $40,550 | $65,550 | $40,550 |
| 2009 | Yes | $139,605 | $88,169 | $38,169 | $63,169 | $38,169 |
| 2008 | Yes | $156,500 | $88,081 | $38,081 | $63,081 | $38,081 |

| Year | | | | | | |
|------|-----|----------|---------|---------|-----|---------|
| 2007 | Yes | $164,700 | $85,516 | $60,516 | N/A | $60,516 |
| 2006 | Yes | $160,200 | $83,430 | $58,430 | N/A | $58,430 |
| 2005 | Yes | $147,100 | $81,000 | $56,000 | N/A | $56,000 |
| 2004 | Yes | $135,700 | $78,700 | $53,700 | N/A | $53,700 |
| 2003 | Yes | $112,700 | $77,300 | $52,300 | N/A | $52,300 |
| 2002 | Yes | $93,600  | $75,500 | $50,500 | N/A | $50,500 |
| 2001 | Yes | $74,400  | $74,400 | $49,400 | N/A | $49,400 |
| 2000 | Yes | $72,800  | $72,400 | $47,400 | N/A | $47,400 |
| 1999 | Yes | $70,500  | $70,500 | $45,500 | N/A | $45,500 |
| 1998 | Yes | $66,700  | $63,500 | $38,500 | N/A | $38,500 |
| 1997 | Yes | $64,400  | $62,500 | $37,500 | N/A | $37,500 |
| 1996 | Yes | $64,200  | $60,700 | $35,700 | N/A | $35,700 |

### 2018 Tax Information

2018 Tax Bill                Tax District: HR

2018 Final Millage Rate             18.9104

**Do not rely on current taxes as an estimate following a change in ownership. A significant change in taxable value may occur after a transfer due to a loss of exemptions, reset of the Save Our Homes or 10% Cap, and/or market conditions. Please use our new Tax Estimator to estimate taxes upon a change in ownership.**

### Ranked Sales (What are Ranked Sales?) See all transactions

| Sale Date | Book/Page | Price | Q/U | V/I |
|-----------|-----------|-------|-----|-----|
| 19 Nov 1998 | 10309 / 2189 | $99,000 | Q | I |
| | 05053 / 0952 | $35,200 | Q | |
| | 04763 / 1426 | $25,600 | Q | |
| | 04418 / 1017 | $22,900 | Q | |

Seawall: No

| Land Use | Land Size |
|----------|-----------|
| Single Family (01) | 60x100 |

View:

| | Adjusted Value | Method |
|---|---|---|
| ...ents | $113,400 | FF |

...ck to Top

**Compact Property Record Card**



Open plot in New Window

Building Type: **Single Family**

Quality: **Average**

Foundation: **Continuous Footing**

Floor System: **Slab On Grade**

Exterior Wall: **Cb Stucco/Cb Reclad**

Roof Frame: **Gable Or Hip**

Roof Cover: **Shingle Composition**

Stories: **1**

Living units: **1**

Floor Finish: **Carpet/Hardtile/Hardwood**

Interior Finish: **Drywall/Plaster**

Fixtures: **6**

Year Built: **1960**

Effective Age: **46**

Heating: **Central Duct**

Cooling: **Cooling (Central)**

### Building 1 Sub Area Information

| Description | Living Area SF | Gross Area SF |
|---|---|---|
| Open Porch Unfinished | 0 | 65 |
| Open Porch | 0 | 12 |
| Base | 1,748 | 1,748 |
| | Total Living SF: **1,748** | Total Gross SF: **1,825** |

### [click here to hide] 2019 Extra Features

| Description | Value/Unit | Units | Total Value as New | Depreciated Value | Year |
|---|---|---|---|---|---|
| SHED | $15.00 | 120.00 | $1,800.00 | $720.00 | 1960 |
| PATIO/DECK | $9.00 | 225.00 | $2,025.00 | $810.00 | 1985 |
| FIREPLACE | $6,000.00 | 1.00 | $6,000.00 | $2,640.00 | 1960 |

### [click here to hide] Permit Data

**Permit information is received from the County and Cities. This data may be incomplete and may exclude permits that do not result in field reviews (for example for water heater replacement permits). We are required to list all improvements, which may include unpermitted construction. Any questions regarding permits, or the status of non-permitted improvements, should be directed to the permitting jurisdiction in which the structure is located.**

| Permit Number | Description | Issue Date | Estimated Value |
|---|---|---|---|
| 12-00000652 | ROOF | 15 Jun 2012 | $6,173 |



216

This PARCEL MAP is subject to terms of use at: http://www.pcpao.org/Terms_of_Use.html

Interactive Map of this parcel   Map Legend                    Sales Query      Back to Query Results        New Search      Tax Collector Home Page        Contact Us

# EXHIBIT "C"

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**
**www.flmb.uscourts.gov**

IN RE:                                                        CASE NO.: 8:19-bk-03059-RCT
                                                                    CHAPTER 7

Karin D. Case,

      Debtor.

_____/

<u>**ORDER GRANTING RELIEF FROM THE AUTOMATIC STAY**</u>

THIS CASE came on consideration without a hearing on <AITNO>'s ("Secured Creditor") Motion for Relief from Stay (Docket No. ##).  No appropriate response has been filed in accordance with Local Rule 2002-4.  Accordingly, it is:

**ORDERED:**

1. Secured Creditor's Motion for Relief from Automatic Stay is GRANTED.

2. The automatic stay imposed by 11 U.S.C. § 362 is terminated as to the Secured Creditor's interest in the following property located at 615 6th Ave N, Safety Harbor, FL 34695, in Pinellas County, Florida, and legally described as:

1

THE LAND REFERRED TO IN THIS EXHIBIT IS LOCATED IN THE COUNTY OF
PINELLAS AND THE STATE OF FLORIDA IN DEED BOOK 10309 AT PAGE 2189
AND DESCRIBED AS FOLLOWS:
LOT 14, BLUE SPRINGS, ACCORDING TO THE MAP OR PLAT THEREOF AS
RECORDED IN PLAT BOOK 57, PAGE 7, PUBLIC RECORDS OF PINELLAS
COUNTY, FLROIDA.

3.  The Order Granting Relief from Stay is entered for the sole purpose of allowing Secured
    Creditor to exercise any and all *in rem* remedies against the property described above.
    Secured Creditor shall not seek an *in personam* judgment against Debtor(s).

4.  Secured Creditor is further granted relief in order to contact the Debtor(s) by telephone or
    written correspondence in order to discuss the possibility of a forbearance agreement,
    loan modification, refinance agreement or loan workout/loss mitigation agreement.

5.  The Secured Creditor's request to waive the 14-day stay period pursuant to Bankruptcy
    Rule 4001(a)(3) is granted.

6.  Attorneys' fees in the amount of $345.00 and costs in the amount of $181.00 are awarded
    for the prosecution of this Motion for Relief from Stay, but are not recoverable from the
    Debtor(s) or the Debtor(s)' Bankruptcy estate.

###

Attorney, ASSIGNED CASELOAD ATTORNEY NAME, is directed to serve a copy of this
order on interested parties and file a proof of service within 3 days of entry of the order.