IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In Re:

                                    Case No:  8:19-bk-03059-RCT

Karin D. Case                              Chapter 7

      Debtor(s).

_____/

## CHAPTER 7 TRUSTEE'S APPLICATION TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND LISTING AGENT TO PROCURE CONSENTED PUBLIC SALE PURSUANT TO 11 U.S.C. §§327, 328 AND 330

Richard M. Dauval, as Chapter 7 Trustee (the "Trustee") for the above referenced debtor(s) (together, the "Debtor"), by and through the undersigned counsel, files this Application for entry of an order authorizing retention of (1) BK Global Real Estate Services ("BKRES") under the terms set forth in the agreement (the "BKRES Agreement") attached to BKRES' Affidavit of Disinterestedness (the "BKRES Affidavit") and (2) Greg Armstrong of Coldwell Banker F.I. Grey Residential, Inc. ("Listing Agent") under the terms of the agreement (the "Listing Agreement") attached to Listing Agent's Affidavit of Disinterestedness at (the "Listing Agent Affidavit").  In support thereof, the Trustee respectfully states as follows:

### PRELIMINARY STATEMENT

Trustee requests approval to retain BKRES and Listing Agent, at no cost to the estate, to negotiate with and persuade the first lienholder on certain real property in which the estate has no equity to (1) allow Trustee to sell such property at the highest price that the market will bear, (2) waive the resulting deficiency claim and (3) pay a 11 U.S.C. § 506 surcharge to provide a carveout for the benefit of the estate and pay all other sale expenses, including a 6% brokerage commission that will be shared equally by BKRES and Listing Agent only upon the closing of a sale that is approved by this Court.

1

BKRES and its affiliates have proprietary technology and a national team of experienced loan servicing specialists, asset managers, negotiators, trustee relation managers, real estate brokers and agents, closing specialists and attorneys with extensive experience in procuring the consent of mortgage lenders and servicers to sell over-encumbered properties and provide significant cash recoveries to selling estates with no equity, through the Consented Sale™ process described herein.

The proposed agreements are attached and provide that BKRES and Listing Agent will not be entitled to any compensation from the estate whatsoever under any circumstances. They will only receive and share a customary brokerage commission that is paid by secured creditor as a 11 U.S.C. § 506 surcharge approved by this Court.

The Trustee (1) believes that hiring BKRES and Listing Agent to pursue a Consented Sale™ will likely result in secured creditor paying a carveout for the benefit of the estate with proceeds from the public sale of an asset in which the estate has no equity and (2) expects to obtain secured creditor's agreement to a Consented Sale™, and bring a separate motion seeking this Court's approval of the procedures, terms and conditions by which the over-encumbered property will be sold, within the coming months.

## JURISDICTION

This Court has jurisdiction to consider this Application pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A), (M), (N), and (O).

Venue is proper before this Court pursuant to 28 U.S.C. §§1408 and 1409.

## BACKGROUND

On 04/03/19 the Debtor commenced this case by filing a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code.

Thereafter, the Trustee was appointed as the Chapter 7 trustee in this case.

The Trustee held and concluded the 341 meeting on May 8, 2019.

The Debtor is the sole owner of real property located at 615 6TH Ave N Safety Harbor, FL 34695 (the "Property"). The Debtor has not claimed the Property as exempt and, upon information and belief, the Property is vacant.

The Debtor has no equity in the Property. The Debtor's schedules reflect that the Property is currently worth $160,000.00, but is subject to a first mortgage lien (the "Senior Mortgage") in favor of Mr. Cooper (the "Secured Creditor") in an amount exceeding $208,458.00.

The Trustee, after reviewing certain materials, including (without limitation) the BK Score™[1], sales analysis report and opinion of value for the Property provided by BKRES and Listing Agent, has determined it to be in the best interest of the Debtor's estate and all creditors to negotiate to obtain Secured Creditor's agreement and consent ("Consent") to:

    a.  sell the Property to whichever third party Trustee determines to have made the best qualified offer during a public sale approved by the Court;

    b.  buy the Property from the Debtor's estate if (and only if) no such offer is made;

    c.  release the Senior Mortgage and otherwise waive all of its claims against the estate with respect to the Property (including any deficiency claims resulting from the proposed sale); and

    d.  agree to a 11 U.S.C. § 506 surcharge to pay all of the expenses associated with the proposed sale, including the payment of a 6% real estate brokerage commission to BKRES and Listing Agent and reimbursement of their out-of-

---

[1] The BK Score™ is a 100-point rating that is generated by a proprietary algorithm from 10 unique property attributes in order to consistently measure sales confidence and predict market value.

pocket expenses, and provide a carveout for the benefit of allowed unsecured creditors of the Debtor's estate.

Trustee expects BKRES and Listing Agent to obtain Secured Creditor's Consent and bring a separate motion seeking an order approving the sale of the Property (the "Motion to Approve Sale") within several months of the entry of the order sought by this Application.

By this Application, the Trustee requests authority pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code to (a) retain BKRES and Listing Agent to procure Secured Creditor's Consent, and (b) approve Secured Creditor's payment of the fees described below directly to BKRES and Listing Agent at closing of the sale of the Property, if and when the Consent and Motion to Approve Sale are granted.

## APPLICATION

Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327...on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, on a fixed percentage or fee basis, or on a contingent fee basis." 11 U.S.C. § 328(a). Section 330 of the Bankruptcy Code permits the Court to "award to a trustee… or a professional person employed under section 327…(A) reasonable compensation for actual, necessary services rendered [by such party]… and (B) reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).

As further described in the materials attached to their affidavits, BKRES[2] and Listing Agent have extensive experience obtaining the consent and agreement of mortgage lenders and

---

[2] BKRES is the broker affiliate of BK Global (http://www.bkginc.com/).

servicers to the sale of their collateral and resolution of any resulting unsecured claims in order to produce a recovery for estates from over-encumbered assets in which the estate has no equity.

The Trustee believes that the highest and best value for the Property will be generated through a sale in which the Property is widely marketed to the public and offered at the highest price that the market will bear.  The Trustee further believes that such a sale is in the best interest of the Debtor's estate, but can only be achieved if Secured Creditor's Consent is first obtained. That is why the Trustee believes that retaining BKRES and Listing Agent to obtain Secured Creditor's Consent is in the best interests of the Debtor's estate.

In no event will the estate have any obligation to pay BKRES or Listing Agent.  The terms of the BKRES Agreement and Listing Agreement provide that BKRES and Listing Agent are only entitled to payment if and when (a) Secured Creditor grants its Consent, (b) the Motion to Approve Sale is granted and (c) the Property is sold, in which event BKRES and Listing Agent will receive and share a 6% real estate brokerage commission at closing in accordance with the order approving the sale.

BKRES and Listing Agent will not be entitled to any fees if Secured Creditor does not grant its Consent or the Court does not grant the Motion to Approve Sale.

The Trustee submits that the terms of employment and compensation as set out in the BKRES Agreement and Listing Agreement are reasonable in light of the extensive experience of BKRES and Listing Agent and the nature of the services they provide.

BKRES attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a).  Attached hereto is an Affidavit of Disinterestedness of BKRES.  BKRES also attests, pursuant to

Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than Listing Agent.

Listing Agent attested that it is a disinterested person within the meaning of Section 101(14) of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure 2014 and 2016(a).  Attached hereto is an Affidavit of Disinterestedness of Listing Agent.  Listing Agent also attests, pursuant to Bankruptcy Rule 2016, that it shall not split or share its fee with any individual or entity other than BKRES.

### CONCLUSION

For the foregoing and all other necessary and proper purposes, the Trustee seeks the Court's authority to retain BKRES and Listing Agent in this case, and requests that the Court approve the compensation arrangements set forth in the BKRES Agreement and Listing Agreement pursuant to Sections 327, 328(a) and 330 of the Bankruptcy Code.

DATE:  MAY 14, 2019                                        RESPECTFULLY SUBMITTED,


BY:      /S/ RICHARD M. DAUVAL, ESQ.
              Richard M. Dauval, Esq.
              Attorney for the Chapter 7 Trustee
              3900 1st Street North
              Saint Petersburg, FL 33703

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

In re:                                                  Case No. 19-03059
                                                        Chapter 7
Karin Case


_____ Debtors _____ /


AFFIDAVIT OF GREG ARMSTRONG IN SUPPORT OF APPLICATION
TO RETAIN BK GLOBAL REAL ESTATE SERVICES AND COLDWELL
BANKER F.I. GREY RESIDENTIAL, INC. TO PROCURE CONSENTED
PUBLIC SALE PURSUANT TO 11 U.S.C. § 327, 328 AND 330

STATE OF FLORIDA                    )
                                    )
COUNTY OF Pasco                     )

        Greg Armstrong, being duly sworn, says:

        1.      I am a real estate agent duly licensed by the State of Florida.

        2.      I am an agent of Coldwell Banker F.I. Grey Residential, Inc. a
Florida Corporation, with corporate offices located at 6330 US Highway 19 New Port
Richey, FL 34652, ("Listing Agent").

        3.      I am familiar with the Application to Retain Coldwell Banker F.I.
Grey Residential, Inc., filed by the Trustee ("Application") and the property described
therein.

        4.      I believe that I am experienced and qualified to represent the Trustee
in connection with the marketing and sale of the real property located at 615 6TH AVE N
SAFETY HARBOR, FL 34695 (the "Property").

        5.      Coldwell Banker F.I. Grey Residential, Inc. has agreed to accept
employment pursuant to the terms and conditions set forth in the Application and the
proposed commission structure.  Based upon my experience and knowledge of the real
estate market, I believe that the commission structure proposed to be paid to Listing Agent
does not exceed customary commissions in the applicable geographical area and are
reasonable for the type of employment proposed.

6.      Neither I nor any member of Coldwell Banker F.I. Grey Residential, Inc. hold or represent any interest adverse to the estate with respect to the matters for which we are to be employed and we are disinterested persons within the meaning of 11 U.S.C. § 101(14), as required by § 327(a).

7.      To the best of my information and belief, neither I nor the other members of this firm have any connection with the Debtors, their creditors, or any other party in interest or their respective attorneys or accountants, the U. S. Trustee, or any person employed in the office of the U.S. Trustee, as required by Rule 2014 of the Federal Rules of Bankruptcy procedure except as set forth below.

8.      I represent no interest adverse to the Debtors or its estate in the matters upon which I am to be engaged.

FURTHER AFFIANT SAYETH NAUGHT.

Greg Armstrong of
Coldwell Banker F.I. Grey
Residential, Inc.

The foregoing instrument was sworn to and subscribed before me this 3 day of

May , 2019

NOTARY PUBLIC

Notary Public, State of Florida

Type, Stamp, or Print Name as
Commissioned

Notary Public State of Florida
Kelly Marie Parker Powell
My Commission GG 199942
Expires 03/26/2022

2

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| | : | Case No. 8:19-bk-03059-RCT |
| | : | |
| Debtor | : | |
| Karin Case | : | |
| | : | |
| | : | |

**DECLARATION OF PATRICK BUTLER IN SUPPORT OF APPLICATION
TO RETAIN BK GLOBAL REAL ESTATE SERVICES TO PROCURE CONSENTED
PUBLIC SALE PURSUANT TO 11 U.S.C. § 327, 328 AND 330**

The undersigned, Patrick Butler ("Declarant") hereby states:

1.       I am employed by BK Global Real Estate Services ("Applicant" or "BKRES"), which is an entity duly licensed as a real estate brokerage by the State of Florida located at 1095 Broken Sound Parkway, N.W., Suite 100, Boca Raton, FL 33487. I am Applicant's broker-in-charge and am authorized by Applicant to submit this Declaration on Applicant's behalf in support of the annexed Application to Retain BKRES and in accordance with Bankruptcy Rule 2014.

2.       Based upon the information discussed below, I believe that Applicant is a disinterested person and does not hold or represent any interest adverse to the interest of the Debtor's estate as that term is defined in Section 101(14) of the Bankruptcy Code.

3.       To the best of my knowledge:  (a) neither BKRES nor any of its employees has any connection with the Debtor, its creditors in this case, the Chapter 7 Trustee, the Office of the United States Trustee, or any employees thereof or any party in interest herein; (b) BKRES and each of its employees are "disinterested persons," as that term is defined in Section 101(14) of the Bankruptcy Code; and (c) neither BKRES nor any of its employees hold or represent an interest adverse to the Debtor's estate.

4.      A description of the qualifications of, and services provided by, BKRES is attached as <u>Schedule 1</u>.

5.      That I have read the application of the Trustee regarding the retention and compensation of BKRES and agreed to be bound by the terms and conditions represented therein.

6.      That I further understand that the Court, in its discretion, may alter the terms and conditions of employment and compensation, as it deems appropriate.

Verified under penalty of perjury that the foregoing is true and correct this *10* day of May, 2019.

> Patrick Butler
> Broker-in-Charge

The foregoing instrument was sworn to and subscribed before me this *10* day of May 2019, by Patrick Butler who provided identification or is personally known to me and who did take an oath.

> NOTARY PUBLIC

> Notary Public, State of Florida

My Commission Expires



Notary Public State of Florida
Sharon B Sirois
My Commission GG 300406
Expires 02/11/2023

## SCHEDULE I

BK Global Real Estate Services is a licensed real estate brokerage by the State of Florida, located at 1095 Broken Sound Parkway N.W., Suite 100, Boca Raton, Florida, 33487.

BK Global Real Estate Services has a strong background and extensive experience in dealing with the mortgage servicing industry and is considered an expert in assisting in the negotiations with secured creditors whose debt is in excess of the market value of the real property and in negotiating short sales.

BK Global Real Estate Services has been providing real estate services to Chapter 7 bankruptcy trustees since 2014.

BK Global Real Estate Services has developed a process to assist Chapter 7 trustees in the sale of over-encumbered real estate to obtain the consent of the secured creditor to allow the Chapter 7 trustee to sell the real property and to assist the Chapter 7 trustee in negotiating a carve out for the bankruptcy estate that will provide a meaningful distribution to the unsecured creditors..

BK Global Real Estate Services is to be retained by the Chapter 7 trustee pursuant to 11 U.S.C. § 327. The first step is for BK Global Real Estate Services to assist the Chapter 7 trustee in obtaining the consent of the secured creditor(s) to allow the Chapter 7 trustee to sell the secured real estate. Those negotiations will include establishing a carve-out of the sale proceeds to the bankruptcy estate that will provide a meaningful distribution to unsecured creditors.

In addition, a carve out will be established to pay a real estate commission to BK Global Real Estate Services and a local real estate licensed broker. In addition, as part of the negotiations, the secured creditor(s) will be required to waive the filing of any deficiency claim.

Once the Court has approved the retention of BK Global Real Estate Services and the local real estate licensed broker, then the real property will be listed for sale at an agreed listing price by the secured creditor.

A motion will be filed to approve the settlement and compromise reached between the Chapter 7 trustee and the secured creditor.

BK Global Real Estate Services has successfully assisted Chapter 7 trustees in 33 court districts in the consented program. BK Global Real Estate Services does this by achieving the highest sale prices for properties as opposed to the more common "discounted sale" often presented to secured creditors by less experienced service providers. The transaction is never consummated unless the carve-out percentage or fee is sufficient to provide a meaningful distribution to unsecured creditors. BK Global Real Estate Services has standards in the mortgage industry whereby all parties can have a mutually beneficial outcome to the sale. The sale of over-encumbered real estate in bankruptcy presents a superior outcome to all parties.

- Unsecured creditors achieve a meaningful distribution on many more bankruptcy cases than they do on 'no asset' cases;

- The Chapter 7 trustee is able to conduct these transactions in a very cost-effective manner substantiating the carve-out amounts generated in these sales; and

- Secured creditors achieve more favorable recovery than they would via foreclosure including minimized compliance risk.

Page 4-2 of the Handbook for Chapter 7 Trustee states that by virtue of 11 U.S.C. § 323(a) the trustee is a representative of the estate. Further, the handbook states, "The trustee is a fiduciary charged with protecting the interest of all estate beneficiaries – namely, all classes of creditors, including those holding secured, administrative, priority and non-priority unsecured claims, as well as the debtor's interest in exemptions and in any possible surplus property."

BK Global Real Estate Services is a licensed Real Estate Broker and acts in the capacity as a licensed agent/broker. As a member of the real estate professional association, BK Global Real Estate Services is permitted to work with local brokers and share fees for work conducted. Section 504(b) of the Bankruptcy Code permits the compensation BK Global Real Estate Services receives for work conducted on a case.

BK Global Real Estate Services has developed a nationwide network of licensed real estate brokers that are trained in the sale of over-encumbered real estate in bankruptcy. BK Global Real Estate Services co-lists the real estate with one of our local trained licensed brokers. The trustee hires both BK Global Real Estate Services and the local broker to perform the required services. The listing commission is split between BK Global Real Estate Services and the local broker.

For these fees, both BK Global Real Estate Services and the local broker share in the duties that are required to conduct a consented sale in bankruptcy.

BK Global Real Estate Services' services include, but are not limited to, the following:

- Researching the real estate, running title and lien searches to identify creditors for resolution and any title issues;
- Advising the trustee of any issues and discuss potential resolutions;
- Conducting the resolutions under the trustee's direction;
- Assisting the trustee in the collection of documents and information for employment;
- Making contact with the secured creditor(s);
- Notifying them of the upcoming sale and identifying servicer requirements;
- Assisting the trustee in establishing market value and negotiating with the servicer an acceptable sales price and establishing a carve-out;
- Development of online marketing, email campaign and full nationwide marketing services;
- Conducting on online sale;
- Use of the technology platform;
- Assist the trustee in the review of all offers and coordinate the final documentation of the offer accepted by the trustee;
- Managing contract requirements such as inspections, appraisals and HOA applications;

- Coordinating closings and assisting the trustee in the collection of required information for court filing; and
- Closing the transaction and ensuring the estate has received the appropriate funds.

Local broker services include, but are not limited to:

- Inspecting the property and completing a broker's price opinion;
- Listing the property in the multiple listing service (MLS); and
- Posting a for sale sign in the yard and coordinating showings.

U.S. Bankruptcy Court Districts where BK Global Real Estate Services conducted Consented Sales:

- Eastern District of Arkansas
- Central District of California
- Eastern District of California
- Southern District of California
- District of Colorado
- District of Connecticut
- Middle District of Florida
- Southern District of Georgia
- District of Hawaii
- Northern District of Illinois
- Northern District of Indiana
- Southern District of Indiana
- Western District of Kentucky
- Eastern District of Louisiana
- Middle District of Louisiana
- Western District of Louisiana
- District of Massachusetts
- District of Maryland
- Eastern District of Michigan
- Eastern District of North Carolina
- District of New Jersey
- District of Nevada
- Eastern District of New York
- Northern District of Ohio
- Southern District of Ohio
- District of Oregon
- Eastern District of Pennsylvania
- Middle District of Pennsylvania
- Western District of Pennsylvania
- Northern District of Texas
- Western District of Texas

- Western District of Washington

# Exclusive Right Of Sale Listing Agreement

 

This Exclusive Right Of Sale Listing Agreement ("Agreement") is between _Richard Duval, BK Trustee for estate of Karin Case_ ("Seller") and Coldwell Banker F.I. Grey and Son Residential, Inc.  ("Broker")

**1. AUTHORITY TO SELL PROPERTY:** Seller gives Broker the EXCLUSIVE RIGHT TO SELL the real and personal property (collectively "Property") described below, at the price and terms described below, the __13__ day of __May_____, __2019__, and terminating at 11:59 p.m. the __12__ day of __November, 2019__ ("Termination Date"). Upon full execution of a contract for sale and purchase of the Property, all rights and obligations of this Agreement will automatically extend through the date of the actual closing of the sales contract. Seller and Broker acknowledge that this Agreement does not guarantee a sale. The Property will be offered to any person without regard to race, color, religion, sex, handicap, familial status, national origin or any other factor protected by federal, state or local law. Seller certifies and represents that he/she/it is legally entitled to convey the Property and all improvements.

**2. Description of property:**
(a) Real Property Street Address: __615 6th Ave. N.   Safety Harbor, FL 34695__
Legal Description __Blue Springs lot 14__
☐ See Attachment
(b) Personal Property, including appliances __Dishwasher__                                    ☐ See Attachment
(c) Occupancy: Property is ☐ is not ☒ currently occupied by a tenant. If occupied, the lease term expires _____

**3. PRICE AND TERMS:** The property is offered for sale on the following terms or on other terms acceptable to Seller.
(a) Price: __169,900__
(b) Financing Terms:  Cash ☒ Conventional ☐  VA  ☐ FHA ☐Other _____

**4. BROKER OBLIGATIONS AND AUTHORITY:** Broker agrees to make diligent and continued efforts to sell the Property until a sales contract is pending on the property. Seller authorizes Broker to:

(a) Advertise the Property as Broker deems advisable including advertising the Property on the Internet unless limited in (4) (a) (i) or (4) (a) (ii) below. **(Seller opt-out) (Check one if applicable)**

☐   (i) Display the Property on the Internet except the street address of the Property shall not be displayed on the Internet.

☐   (ii) Seller does not authorize Broker to display the Property on the Internet.

     Seller understands and acknowledges that if Seller selects option (ii), consumers who conduct    searches for listings on the Internet will not see information about the listed property in  response to their search.  _N/A_ _N/A_   Initials of Seller.

(b) Place appropriate transaction signs on the Property, including "For Sale" signs and "Sold" signs (once  Seller signs a sales contract) and use Seller's name in connection with marketing or advertising the Property.

(c) Obtain information relating to the present mortgage(s) on the Property.

(d) Place the Property in a multiple listing service ("MLS"). Seller authorizes Broker  to report to the MLS this listing information and price, terms and financing information on any resulting sale for use by authorized Board / Association members, MLS participants and subscribers; and
(e) Provide objective comparative market analysis information to potential buyers; and

(f) (Check if applicable) ☐  Use a lock box system to show and access the Property. A lock box does not ensure the Property's security; Seller is advised to secure or remove valuables. Seller agrees that the lock box is for Seller's benefit and releases the Broker, persons working through Broker and Broker's local Realtor Board / Association from all liability and responsibility in connection with any loss that occurs.

☐  Withhold verbal offers.    ☐ Withhold all offers once Seller accepts a sales contract for the Property.

(g) Act as a transaction broker of Seller.

(h) **Virtual Office Website:** Some real estate brokerages offer real estate brokerage services online. These websites are referred to as Virtual Office Websites ("VOW"). An automated estimate of market value or reviews and comments about a property may be displayed in conjunction with a property on some VOW's. Anyone who registers on a Virtual Office Website may gain access to such automated valuations or comments and reviews about any property displayed on a VOW. Unless limited below, a VOW may display automated valuations or comments/reviews (blogs) about this Property.

Seller does not authorize an automated estimate of the market value of the listing (or hyperlink to such estimate) to be displayed in immediate conjunction with the listing of this Property.

Seller does not authorize third parties to write comments or reviews about the listing of the Property (or display a hyperlink to such comments or reviews) in immediate conjunction with the listing of this Property.

**5. SELLER OBLIGATIONS:** In consideration of Broker's obligations, Seller agrees to:

(a) Cooperate with Broker in carrying out the purpose of this Agreement, including referring immediately to Broker all inquiries regarding the Property's transfer, whether by purchase or any other means of transfer.

~~(b) Provide Broker with keys to~~ the property and make the Property available for Broker to show during reasonable times.

(c) Inform Broker prior to leasing, mortgaging or otherwise encumbering the Property.

(d) Indemnify Broker and hold Broker  harmless from losses, damages, costs and expenses of any nature, including attorney's fees and from liability to any person, that Broker incurs because of (1) Seller's negligence, representations, misrepresentations, actions or inactions, ~~(2) the use of a lock box,~~ (3) the ~~existence of undisclosed material facts about the Property,~~ or (4) a court or  arbitration decision that a broker who was not compensated in connection with a transaction is entitled to compensation from Broker. This clause will survive Broker's performance and the transfer title.

Seller ( R̶D̶ ) (___) and **Broker/Sales Associate** ( ___ ) acknowledge receipt of a copy of this page.

(e) To perform any act reasonably necessary to comply with FIRPTA (Internal Revenue Code Section 1445).

(f) Make all legally required disclosures, including all facts that materially affect the Property's value and are not readily observable or known by the buyer. **Seller** certifies and represents that **Seller** knows of no such material facts (local government building code violations, unobservable defects, etc.) other than the following: N/A

Seller will immediately inform **Broker** of any material facts that arise after signing this Agreement.

(g) Consult appropriate professionals for related legal, tax, property condition, environmental, foreign reporting requirements and other specialized advice.
**6. COMPENSATION: Seller** will compensate **Broker** as specified below for procuring a buyer who is ready, willing and able to purchase the Property or any interest in the Property on the terms of this Agreement or on any other terms acceptable to **Seller**. **Seller** will pay **Broker** as follows (plus applicable sales tax):
(a) __4__ % of the total purchase price plus $ 295.00 or $ _____, no later than the date of closing specified in the sales contract. However, closing is not a prerequisite for **Broker's** fee being earned.
**7. COOPERATION AND COMPENSATION WITH OTHER BROKERS: Broker's** office policy is to cooperate with all other brokers except when not in **Seller's** best interest; and to offer compensation in the amount of __2__ % of the purchase price or $ _____ to **Buyer's** agent, who represent the interest of the buyer's and not the interest of **Seller** in a transaction; and to offer compensation in the amount of __2__ % of the purchase price or $ _____ to a broker who has no brokerage relationship with the **Buyer** or **Seller**; and to offer compensation in the amount of __2__ % of the purchase price or $ _____ to transaction brokers for the **Buyer**; ☐ None of the above (if this is checked, the Property cannot be placed in the MLS.) will
**8. CONDITIONAL TERMINATION:** At **Seller's** request, **Broker** may agree to conditionally terminate this Agreement. If **Broker** agrees to conditional termination, **Seller** must sign a withdrawal agreement, reimburse ~~Broker for all~~ direct expenses incurred in marketing the Property and pay a cancellation fee of $ _____ plus applicable sales tax. ~~Broker may void the conditional termination and Seller will pay the fee stated in paragraph 6(a)~~ less ~~the cancellation fee if Seller transfers or contracts to transfer the Property or any interest in the Property during the time period from the date of~~ conditional termination to termination Date and Protection Period, if applicable.
**9. DISPUTE RESOLUTION:** This Agreement will be construed under Florida law. All controversies, claims and other matters in question between the parties arising out of or relating to this Agreement or the breach thereof will be settled by first attempting mediation under the rules of the American Mediation Association or other mediator agreed upon by the parties. If litigation arises out of this Agreement, the prevailing party will be entitled to recover reasonable attorney's fees and costs, unless the parties agree that disputes will be settled by arbitration as follows: **Arbitration:** By initialing in the space provided Seller (   ) (   ), Listing Associate (   ) and Listing Broker (   ) agree that disputes not resolved by mediation will be settled by neutral binding arbitration in the county in which the Property is located in accordance with the rules of the American Arbitration Association or other arbitrator agreed upon by the parties. Each party to any arbitration (or litigation) to enforce the arbitration provision of this Agreement or an arbitration award) will pay its own fees, costs and expenses, including attorney's fees, and will equally split the arbitrators' fees and administrative fees of arbitration.
**10. MISCELLANEOUS:** This Agreement is binding on **Broker's** and **Seller's** heirs, personal representatives, administrators, successors and assigns. **Broker** may assign this Agreement to another listing office. This Agreement is the entire agreement between **Broker** and **Seller**. No prior or present agreements or representations shall be binding on **Broker** or **Seller** unless included in this Agreement. Signatures, initials and modifications communicated by facsimile will be considered as originals. The term "buyer" as used in this Agreement includes buyers, tenants, exchangors, optionees and other categories of potential or actual transferees.
**11. ADDITIONAL TERMS:** This listing agreement and any Sale of the Property is subject to and conditioned upon approval of the United States Bankruptcy Court

Date: _____  Seller's Signature: _____
Home (Cell) Telephone: _____  Work Telephone: _____
Facsimile: _____  Address: _____
Date: _____  Seller's Signature _____
Home (Cell) Telephone: _____  Work Telephone: _____
Date: _____  Authorized Listing Associate or Broker: _____
Brokerage Firm Name: Coldwell Banker F.I. Grey & Son Res., Inc.    Telephone: (727) 495-2424
Address: 6330 U.S. Highway 19, New Port Richey, FL 34652  /  17953 Hunting Bow Circle, Suite 102, Lutz FL 33558
Copy returned to Customer on the __9__ day of __May__ 20_19_ by;    ☐ Personal delivery ☐ mail ☐ E-mail ☑ facsimile.

The Florida Association of REALTORS makes no representation as to legal validity or adequacy of any provision of this form in any specific transaction. This standardized form should not be used in complex transactions or with extensive riders or additions, this form is available for use by the entire real estate industry and is not intended to identify the user as a REALTOR®. REALTOR® is a registered collective membership mark, which may be used only by real estate licensees who are members of the NATIONAL ASSOCIATION OF REALTORS and who subscribe to its Code of Ethics. The copyright laws of the United States (17 U.S. Code) forbid the unauthorized reproduction of this form by any means including facsimile or computerized forms.

Seller (  ) (  ) and Broker/Sales Associate (  ) acknowledge receipt of a copy of this page.